**RESOLUTION TRUST CORPORATION**
as Conservator for Capital–Union Federal Savings Association, and Receiver for Capital–Union Savings, F.A.

v.

Keith R. DUBOIS and Maureen Cooper Dubois.

Civ. A. No. 90–981–B.

United States District Court, M.D. Louisiana.

Aug. 16, 1991.

James R. Lackie, Kelly Wilkinson, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, La., for plaintiff.

Porteus R. Burke, Burke, Cestia, Landry & Lee, New Iberia, La., for defendants.

### RULING ON THE RESOLUTION TRUST CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

POLOZOLA, District Judge.

This matter is currently before this Court on the motion for summary judgment filed by the Resolution Trust Corporation (RTC), as Conservator for Capital–Union Federal Savings Association (New Capital–Union), concerning two secured promissory notes executed by Keith R. and Maureen Cooper Dubois. Also pending before this Court is a motion by the RTC, as Receiver for Capital–Union Savings, F.A. (Old Capital–Union), to dismiss the defendants' counter-claims.[1] The RTC is seeking to collect on two secured promissory notes originally executed in favor of Old Capital–Union which are now in default. On October 15, 1984, Keith Dubois executed a $125,000.00 promissory note with a fixed

interest rate of 13.75% per annum, payable on demand (Note 1). Note 1 is secured by a collateral mortgage note and collateral mortgage, both of which were executed by Keith and Maureen Dubois and dated July 25, 1984. On March 5, 1985, Keith Dubois executed a $90,000.00 promissory note with a fixed interest rate of 11.5% per annum, payable on demand (Note 2). Note 2 is also secured by the same collateral mortgage note and collateral mortgage which secured Note 1. The record reflects that the interest rate on both notes was reduced in April of 1987 by Old Capital–Union to 10% per annum until paid. The defendants have defaulted on the two notes and have failed to make any interest or principal payments since August 10, 1988.

In April of 1989, Old Capital–Union filed this suit for collection on the two overdue notes and the collateral mortgage note. On August 9, 1989, the Congress created the RTC to manage insolvent financial institutions under the Financial Institution Reform, Recovery, and Enforcement Act of 1989 (FIRREA).[2] On July 13, 1990, the Department of Treasury's Office of Thrift Supervision (OTS) determined that Old Capital–Union was insolvent and appointed the RTC as Receiver. On that same date, the OTS issued a federal charter to New Capital–Union to take over such assets and liabilities of the Old Capital–Union as determined by the RTC, in its capacity as Conservator for New Capital–Union. Among the assets of New Capital–Union are the secured notes of the defendants. The RTC removed this action to federal court on October 10, 1990.

### I. RTC's Motion for Summary Judgment

◼ The RTC, as Conservator for New Capital–Union, has moved for summary judgment against the defendants concerning the notes and security instruments.

---

1. Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1819, and 28 U.S.C. § 1331, this Court has subject matter jurisdiction. *FDIC v. Kasel,* 913 F.2d 487, 493 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1072, 112 L.Ed.2d 1178 (1991); *Carrollton–Farmers Branch Indep. School Dist. v. Johnson & Cravens,* 889 F.2d 571, 572 (5th Cir.1989); *FDIC v.*

*Fortenberry Farms, Inc.,* 754 F.Supp. 86, 87–88 (M.D.La.1990). Venue is proper under 28 U.S.C. § 1391 & 1392.

2. Pub.L. No. 101–73, 103 Stat. 183.; *see Circle Indus. v. City Federal Savings Bank,* 749 F.Supp. 447 (E.D.N.Y.1990); *aff'd,* 931 F.2d 7 (2d Cir. 1991).

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] To oppose the granting of summary judgment, Rule 56(e) provides that "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, ... [instead, the defending party], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." When all the evidence presented by both parties could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.[4]

The RTC has made the original notes and security instruments part of the record of this case. The defendants have not entered any objection to the their signatures[5] or the validity of the instruments. The evidence also establishes, and the defendants do not dispute, that the amounts set forth on the face of each note were actually distributed by the bank and received by the defendants. Therefore, the evidence in the record supports the existence of the promissory notes and the security instruments. Further, the RTC has provided sufficient evidence to establish that the notes are in default, based upon the terms set forth on the face of the instruments, the amount of unpaid principal, and the rate of accrued interest due on each of the notes.

The defendants assert as an affirmative defense that the fixed rates of interest on each note is incorrect. The defendants contend that the interest rate was to be variable in accordance with a "commitment letter" dated July 14, 1984, and signed by the defendants and an officer of the bank. Under the variable terms of the commitment letter, the interest due on the notes would be less than the interest calculated by the terms set forth on Notes 1 and 2.[6] The Court finds that this defense is not available under the facts of this case.

Under the *D'Oench, Duhme* Doctrine,[7] codified at 12 U.S.C. § 1823(e), an agreement which varies the terms of the promissory note is not valid and effective against the RTC unless it satisfies all four requirements of the statute.[8] The second requirement of § 1823(e) mandates the agreement "have been executed and become a part of a bank record 'contemporaneously' with the making of the note" to be effective against the RTC.[9] Although the commitment letter in this case does provide for a variable interest rate, adjusted quarterly, it was executed *before*, and *not contemporaneously*, with Note 1 or Note 2. The Court finds that the "commitment letter" fails to meet the requirements of § 1823(e) and the intent of the parties is irrelevant. Therefore, the commitment letter is not valid or binding against the RTC.

The defendants also raise other affirmative defenses in their opposition to plaintiff's motion for summary judgment, including fraud, negligence, release by impairment of collateral, and wrongful seizure. The Court finds that none of these defenses can be raised against the RTC under the facts of this case.

Under the *D'Oench, Duhme* Doctrine, federal banking regulators are ex-

---

3. Fed.R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Fontenot v. Upjohn Co.,* 780 F.2d 1190 (5th Cir.1986); *Evans v. Midland Enter., Inc.,* 754 F.Supp. 91 (M.D.La. 1990).

4. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

5. Under Louisiana rule, signatures on notes or instruments not denied are admitted. La.R.S. 10:3–307.

6. This argument concerns the period prior to the reduction of the interest rate to 10% for each note.

7. *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

8. 12 U.S.C. § 1823(e); *FDIC v. Castle,* 781 F.2d 1101, 1106–07 (5th Cir.1986).

9. *Langley v. FDIC,* 484 U.S. 86, 92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987); *RTC v. Crow,* 763 F.Supp. 887, 892 (N.D.Tex.1991).

tended holder in due course status in the purchase and assumption of the assets of a failed institution.[10] As a holder in due course, personal defenses asserted by the maker of the note against the federal regulator in connection with the assumption and purchase of assets of failed institutions are barred.[11] In the case currently before this Court, the RTC is a federal banking regulating organization.[12] The RTC acquired Note 1 and Note 2 from the insolvent Old Capital–Union. Therefore, the RTC is a federal holder in due course concerning the defendants' notes. The Court has examined the basis and nature of all the lender liability affirmative defenses raised by the defendants and finds that in light of the evidence submitted with the briefs and the applicable case law, each defense raised is barred by the RTC's status as a holder in due course and § 1823(e).

■ Finally, the defendants argue that they were released from the obligations to the bank with the execution of an oral *dation en paiement,* or "giving in payment."[13] The basis for this contention is the erroneous marking of the collateral mortgage note as "paid in full" by a bank employee on July 1, 1988.[14] The defendants submit that the collateral mortgage note was marked "paid" because Old Capital–Union orally agreed to a *dation.*

■ A *dation en paiement* cannot exist unless there is "mutual consent of the parties, and the burden of demonstrating that consent must be carried by the debtor."[15] Aside from their allegation, the defendants have failed to present any evidence to establish the *dation* or counter the evidence to the contrary submitted by the RTC.

Further, the Court notes that the mortgage note was not given to the defendants *after* the erroneous marking of "paid." The Court finds there is insufficient evidence submitted to prove that the parties mutually consented to a *dation.* "Absent proof of mutual agreement for the giving and acceptance of [an] alternative performance ... there is no *dation en paiement.*"[16] Therefore, the Court finds the defendants' defense of a *dation* is without merit.

Under the *D'Oench, Duhme* Doctrine, 12 U.S.C. § 1823(e), and the RTC's status as a holder in due course, the Court finds that the motion of the RTC, as Conservator for New Capital–Union, for summary judgment must be granted as a matter of fact and law.

## II. RTC's Motion to Dismiss

The Court must now consider the RTC's motion to dismiss the counter-claims of the defendants, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

■ The defendants have alleged several counter-claims in their pleadings against the RTC, as Receiver for Old Capital–Union, most of which were also raised as affirmative defenses to RTC's motion for summary judgment and discussed by the Court earlier in this opinion. The counter-claims are based on the same facts as the defenses to RTC's motion for summary judgment. The RTC contends that the counter-claims of the defendants should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction based on the defendants failure to exhaust their administrative remedies.

**10.** *FSLIC v. Murray,* 853 F.2d 1251, 1256 (5th Cir.1988); *Delta Savings & Loan Ass'n, Inc. v. A.C.V., Inc.,* 750 F.Supp. 759, 761–62 (M.D.La. 1990).

**11.** *See Campbell Leasing, Inc. v. FDIC,* 901 F.2d 1244, 1248–50 (5th Cir.1990); *Murray,* 853 F.2d at 1256; *Delta Savings & Loan,* 750 F.Supp. at 761–62.

**12.** *See Delta Savings & Loan,* 750 F.Supp. at 760, and *Vernon v. RTC,* 907 F.2d 1101, 1102 (11th Cir.1990), concerning the establishment of the

RTC under FIRREA to replace the Federal Savings and Loan Insurance Corporation (FSLIC).

**13.** La.Civ.Code arts. 2655–2659.

**14.** The RTC attached the affidavit of Debbie Onellion, the bank employee who marked the collateral mortgage note paid, in which she explained the notion was made erroneously.

**15.** *In re Plantation Acceptance Corp.,* 836 F.2d 962, 964 (5th Cir.1988).

**16.** *Id.*

Under FIRREA, the Congress established administrative procedures in 12 U.S.C. § 1821(d) for the adjudication of claims asserted against the receiver of a failed institution. Section 1821(d)(13)(D) precludes a court from asserting jurisdiction until the administrative procedures have been exhausted.[17] The legislative history is clear that "[i]n enacting FIRREA, Congress intended litigants ... to first submit their claims against the failed savings and loan institution to the RTC or FDIC before commencing an action in district court."[18]

The record is clear that the defendants have not presented any claims to the RTC, as Receiver for Old Capital–Union in accordance with the federal procedures proscribed by FIRREA in § 1821(d). Consequently, this Court lacks subject matter jurisdiction to hear the counter-claims raised by the defendants.

■ The Dubois also contend that Maureen Dubois has no liability because she did not sign the promissory notes but only signed the collateral mortgage note and collateral mortgage. The Court finds this argument is without merit under the applicable Louisiana case law concerning community debts and solidary obligations.[19] The burden is on the defendants to demonstrate that the notes are the separate debt of Keith Dubois. However, no evidence was offered by the defendants to support this claim. The law establishes a presumption that the debt incurred in this case is community obligation. Since this presumption has not been overcome by the defendants, the Court must find that Maureen Dubois is liable *in solido* with her husband on the notes involved in this case.

The Court has no jurisdiction to hear the counter-claims of the defendants because they have failed to exhaust their administrative remedies. The Court notes that even if the claims were not subject to dismissal under Rule 12(b)(1), the claims asserted by the defendants against the RTC are not actionable against the RTC under the *D'Oench, Duhme* Doctrine. Therefore, the Court finds that the RTC's motion to dismiss under Rule 12(b)(1) should be granted.

### III. Conclusion

The Court finds that the evidence and law supports the plaintiff's motions for summary judgment and to dismiss. The record reflects that the defendants have not paid interest on the demand notes since August 10, 1988, and only $12.17 has been credited to the principal due on Note 1 and $510.41 credited to the principal of Note 2. In addition, the defendants informed the bank on April 10, 1990, that they could not pay the taxes due on the mortgaged property securing Notes 1 and 2; therefore, in accordance with the terms of the mortgage, Old Capital–Union paid $3,209.44 in property taxes on April 24, 1990. The terms of the mortgage provide that the bank is entitled to reimbursement for the property taxes paid, plus interest at 8% per annum until such time of repayment.

Therefore:

IT IS ORDERED that the RTC's motion for summary judgment should be GRANTED. The Court finds the defendants *in solido* as follows: (1) $124,987.83 in principal on Note 1, plus interest due and payable at the rate of 10% per annum from August 10, 1988, until paid; (2) $89,489.59, together with interest due and payable at the rate of 10% per annum form August 10, 1988, until paid; (3) $3,209.44 in property taxes due and owing on the property securing the promissory notes, paid on April 24, 1990, plus interest at 8% per annum until paid; and (4) a collateral mortgage note

---

**17.** *See Circle Indus. v. City Federal Savings Bank,* 749 F.Supp. 447 (E.D.N.Y.1990); *aff'd,* 931 F.2d 7 (2d Cir.1991); *Tuxedo Beach Club Corp. v. City Federal Savings Bank,* 737 F.Supp. 18 (D.N.J.1990).

**18.** *Circle Indus.,* 749 F.Supp. at 455; *see, Coit Indep. Joint Venture v. FSLIC,* 489 U.S. 561, 563–67, 109 S.Ct. 1361, 1364–65, 103 L.Ed.2d 602 (1989). *See generally, Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (exhaustion of remedies are mandatory when Congress imposes that requirement by statute).

**19.** *Shel–Boze, Inc v. Melton,* 509 So.2d 106 (La. App. 1st Cir.1987).

and collateral mortgage, dated July 24, 1991, securing Notes 1 and 2; all cost associated with this proceeding.[20]

IT IS FURTHER ORDERED that the RTC's motion to dismiss the defendants' counter-claims for failure to exhaust their administrative remedies is GRANTED.

Counsel for the plaintiff shall submit a proposed judgment to the Court within 15 days in accordance with this opinion.

**20.** The promissory notes also provide for attorney's fees; however, pursuant to Uniform Local Rule 20.16, the RTC requests the Court defer ruling on the attorney's fee at this time.